No. 21,355.

RICHARD J. CONROY, *Appellant,* v. THE GRAND LODGE OF THE
BROTHERHOOD OF RAILROAD TRAINMEN, *Appellee.*

SYLLABUS BY THE COURT.

1. BENEFIT INSURANCE — *Claim First to be Presented to Tribunal
Designated by Association.* It is competent for a mutual benefit asso-
ciation to require that claims against it upon its certificates shall be
submitted in the first instance to a tribunal designated by it, and that
the remedy so provided shall be exhausted before recourse is had to
the courts.

2. SAME—*Nonpayment of Dues—Forfeiture—Custom.* In order for a
member of a mutual benefit association who, according to the terms of
his certificate, has lost his rights thereunder by a failure to make a pay-
ment of dues at the time specified, to avoid such forfeiture by reason of
a reliance upon an established practice of accepting delinquent pay-
ments within a definite period after the default, he must show an offer
to make payment within the limit as so extended.

3. SAME—*Rule Not Changed by Entry of Record of Forfeiture or Ex-
pulsion.* Where, notwithstanding a written rule that a loss of member-
ship in a mutual benefit association results automatically from the
failure to pay dues before the first of the month, a practice has been
established of accepting them if offered before the sixth, the entry on
the records that the expulsion of a member has resulted from his
failure to make payment, followed by a notice given him to that effect
between the second and the fifth, does not excuse an omission on his
part to offer the money before the sixth, if he is to rely upon the
extension of time growing out of the practice.

4. SAME—*Nonpayment of Dues—Expulsion—No Waiver by Reason of
Clerical Error in Notice.* Where the expulsion of a member of a mu-
tual benefit association has resulted from his failure to pay his Decem-
ber dues within the prescribed time, and proper entries of the fact have
been made upon the records, the association is not precluded from
relying upon such expulsion as a defense to a claim made by him, by
the unintentional error of a general officer in referring to the expul-
sion as having taken place in October, in a letter denying liability on
account thereof.

Appeal from Crawford district court; ANDREW J. CURRAN,
judge. Opinion filed April 6, 1918. Affirmed.

*John P. Curran, C. S. Denison,* and *John L. Kirkpatrick,* all
of Pittsburg, for the appellant.

*B. S. Gaitskill,* of Girard, for the appellee.

The opinion of the court was delivered by

MASON, J.: Richard J. Conroy brought an action against the Grand Lodge of the Brotherhood of Railroad Trainmen, alleging that on January 24, 1915, while a member of that organization, he received an injury which entitled him to the payment of $1,500, according to the terms of a beneficiary certificate held by him. A trial was had without a jury. Judgment was rendered for the defendant, and the plaintiff appeals.

No special findings were made or asked. The language of the judgment shows that special reliance was placed upon the fact that the claim was based upon injuries of a character that made the defendant's obligation qualified rather than absolute, but, because of the general finding against the plaintiff, any conflicts in the evidence must be resolved in favor of the defendant. There is little controversy, however, over the facts.

The rights of the holder of a certificate issued by the defendant are defined by its constitution. It provides that upon proof being furnished that a member has received an injury of a certain kind, described as constituting total and permanent disability, such as the loss of a hand or foot, or of both eyes, he shall be paid the amount named in his certificate. Such an injury as that suffered by the plaintiff, however, is provided for in what is designated as section 70, reading as follows:

"All claims for disability not coming within the provision of Section 68 shall be held to be addressed to the systematic benevolence of the Brotherhood, and shall in no case be made the basis of any legal liability on the part of the Brotherhood. Every such claim shall be referred to the Beneficiary Board, composed of the President, Assistant to the President and General Secretary and Treasurer, who shall prescribe the character and decide as to the sufficiency of the proofs to be furnished by the claimant, and if approved by said Board, the claimant shall be paid an amount equal to the full amount of the certificate held by him, and such payment shall be considered a surrender and cancellation of such certificate, provided that the approval of said Board shall be required as a condition precedent to the right of any such claimant to benefits hereunder and it is agreed that this section may be pleaded in bar of any suit or action at law, or in equity, which may be commenced in any court to enforce the payment of any such claims. No appeal shall be allowed from the action of said Board in any case; but the General Secretary and Treasurer shall report all disapproved claims made under this section to the Board of Insurance at its next annual meeting for such disposition as such Board of Insurance shall deem just and proper."

The constitution also contains these provisions, which may have some bearing on the case:

"All right of action upon beneficiary certificates shall be absolutely barred, unless proofs of death or total and permanent disability shall be forwarded to General Secretary and Treasurer, as hereinafter required, within six months after such death or disability occurs.

"A member desiring to present a claim under Section 70 shall petition his lodge in writing upon the form provided by the General Secretary and Treasurer; said form must be properly executed by the claimant, and a regular practicing physician or surgeon, showing the condition of the brother and the basis of his claim. If approved by the lodge, the secretary shall forthwith forward them with notice of such approval to the General Secretary and Treasurer, who will at once forward to the lodge necessary blanks and instructions for presenting a claim.

"No suit or action at law or equity shall ever be commenced upon any beneficiary certificate by any claimant until after such claimant by appeal has exhausted all remedies provided for in this Constitution, within the time allowed by this Constitution.

"Payment of death and total and permanent disability claims and claims addressed to the systematic benevolence of the Brotherhood, shall be made from the proceeds of the beneficiary assessments on which such claims appear."

1. Assuming that the allowance and payment of meritorious claims under section 70 is obligatory, and not merely optional, it is clear that the intention is to require the claimant to submit his demand, in the first instance at least, to the tribunal there provided. Whether or not any part of the rules quoted may be objectionable as an effort to oust courts of their jurisdiction, it is competent for the association to compel its members to exhaust the remedies which it has provided, before having recourse to litigation. (19 R. C. L. 1226-1228; *Supreme Lodge v. Raymond*, 57 Kan. 647, 47 Pac. 533.) The defendant asserts that the plaintiff is precluded from recovery by the fact that he never presented his claim as required by the rules quoted. To this he responds that on November 6, 1915, his attorneys wrote a letter, demanding payment of his claim, to the defendant's general secretary and treasurer, who sent an answer saying:

"I find that Mr. Conroy was formerly a member of our organization belonging to lodge No. 41 at Clinton, Ill., however, he was expelled by that lodge on October 1st, 1914, consequently as he is no longer a member of the Brotherhood, the Organization would not be liable for any injury sustained by him."

The plaintiff contends that this answer excuses his omission to comply with the rules, and amounts to a waiver of all defenses excepting that specifically referred to. The defendant responds that the officer who wrote the letter had no authority to waive its rights—that such is the law of Ohio, and that the contract by its terms is to be interpreted according to the laws of that state. Out of the rather extensive field of issues thus presented, we select for consideration the one most closely related to the substantial rights of the parties—the question whether the plaintiff was a member of the order at the time of his injury.

2. Dues were required to be paid monthly in advance, before the first day of each month. The failure to make payment within the time stated automatically effected an expulsion. The plaintiff joined the order in April, 1914. His dues for the following December were not paid. A meeting of the local lodge to which he belonged was held on the evening of December 2, and at that time an entry was made in the record of the proceedings reading: "Treasurer's report of expelled members. The following members were reported expelled: R. J. Conroy." Obviously, the purpose of this was not to show the plaintiff's expulsion by action of the lodge, but to make a formal record of the fact that his membership had been terminated by his failure to pay his dues. On December 4, he received a notice, dated December 2, stating that he had been expelled. On December 14, his sister, who had been attending to his payments, sent the amount of his December dues to the lodge treasurer, but it was refused. No application for his reinstatement was made. As already mentioned, the injury occurred January 24, 1915. On July 13, 1915, the plaintiff, according to his testimony, mailed a letter to the general secretary and treasurer stating that his attorney had told him he had not been expelled, and that he was entitled to his money for his disability, and asking for blanks to use in making out his claim. The defendant's evidence is that no such letter was received. The only other correspondence on the subject was that already referred to—the letter of November 6, and its answer.

The plaintiff's failure to pay his dues for December, within the time prescribed, worked a forfeiture of his membership,

Conroy v. Railroad Trainmen.

according to the terms of his contract. To avoid this effect he relies upon the establishment of a practice on the part of the defendant of accepting payments after the expiration of the period fixed by the constitution. The scope of the general rule in that regard, and its limitations, are indicated in the following statement of it, a clause having especial bearing upon the present situation being here italicised:

"Where a mutual benefit association has, in repeated instances, received from a member the payment of overdue assessments, so as to establish a custom or course of dealing between the parties and lead the member to believe that a strict observance of a requirement as to the time of payment is not required, it is held that the certificate of insurance is not forfeited by failure to pay an assessment at the time when the by-laws of the society or a stipulation in the certificate requires it to be paid *provided it is paid within the customary period of extension of the time of payment,* for the association is estopped by its course of conduct from claiming a forfeiture according to the strict letter of its contract." . . . "But to invoke the doctrine of estoppel under such circumstances, the course of conduct must amount to an actual custom and not consist of occasional acts of indulgence on the part of the association. And it must be shown that the delinquent member had notice of the practice and relied thereon." (19 R. C. L. 1274, 1275.)

There was evidence that the collector of the local lodge was in the habit of receiving dues after the time fixed, but only within a definite period. He testified: "Our pay day falls on the first, but the dues are supposed to be paid before, but I always accept money between the first and the fifth, because I have five days of grace to send this money away." There is no evidence of any practice of receiving dues after the 5th. Another witness gave this testimony: "I worked with the financier three or four years I expect and have taken as many as a dozen or fifteen dues between the first and the fifth." The plaintiff's sister, who had made all the payments in his behalf, testified: "I always paid the dues for my brother about the first of each month. I never paid them after the second or third of the month." A practice of the collecting officer to accept past-due payments which are offered before the making up and transmission of his report cannot be regarded as affecting an indefinite extension of the time of payment. Here no tender of the plaintiff's December dues was made before the 15th. No practice of receiving dues at that date was shown to exist, whether known to the plaintiff or

not, and we hold that the belated offer was not sufficient to continue his membership in force.

3. If action by the lodge had been necessary to bring about the expulsion of the plaintiff, and had been taken on the second, it might be regarded as ineffective because contrary to the custom which had been established. But no such action was necessary or was in fact taken. If the local officers had been offered the money necessary to keep the plaintiff in good standing, before they had made a report—while the record was still within their control—they might have accepted it *"nunc pro tunc"* and amended the entries accordingly. The mere making of an entry showing such a noncompliance with the rules as in itself by the written law worked a forfeiture, although it may have been tentative and subject to recall if compliance should be made within the period of grace allowed by usage, is not tantamount to affirmative action attempting an expulsion in violation of an established custom. No connection whatever is shown between the notification to the plaintiff that he had been expelled and the delay on the part of his sister in sending the money for his December dues.

4. Assuming that the duties of the general secretary and treasurer were of a character to make the defendant fully responsible for his letter above quoted, and that its statements are such as to cut off all defenses except that based upon the plaintiff's loss of membership, we think it would be extending the principle of waiver too far to hold that because the letter stated that the plaintiff had been expelled on October 1 the association could not rely upon an expulsion which took place December 1. The situation is quite different from that presented in *Mayes v. Knights & Ladies of Security*, 92 Kan. 841, 142 Pac. 290. There dues were required to be paid before the last of each month. No payments were made in June or July, 1909, but the dues for June, July, and August were all offered at once, and accepted. In the litigation which followed, the association asserted that this payment was not made until September 4, but the claimant contended, and the court found, that it was made on August 31. The death of the member occurred September 8. In response to a claim against the association, its president wrote a letter denying liability on grounds which were thus stated:

Conroy v. Railroad Trainmen.

" 'The assessment and dues of Mrs. Mayes, which were due on the first day of August, and which she had until midnight of the last day of August to pay, were not paid to the financier of Free Silver Council No. 198 until September 4. Consequently, the deceased was suspended for nonpayment of the August assessment and dues from midnight of August 31 until September 4, 1909. . . . We are in possession of evidence that can not be questioned showing that the deceased was seriously ill on September 4, 1909. . . . Consequently, no reinstatement could possibly have been had on the date that payment was made by the sister of the deceased, which was September 4, 1909, owing to the physical condition of the deceased when the attempt was made to reinstate her.' " (pp. 843, 844.)

It was held that the defense was limited to the controversy over the August dues, the court saying:

"With the knowledge of the facts, as we must presume, and as implied in his letter, the president of the association placed its refusal to pay the certificate distinctly upon the alleged failure to make the August payment, without making any objection or claim because the other payments were made without producing a health certificate, thereby apparently adopting the act of the financier in receiving the June and July payments.

. . . . . . . . . . . . . . .

"When the demand for the allowance of the claim was made upon the association it could insist upon, or waive, any forfeiture or forfeitures claimed. It elected to rely only upon the forfeiture claimed by reason of the delay in the August payment, thereby waiving any others it might have claimed." (pp. 845, 846.)

In the present case the writer of the letter testified that the word October was used in place of December through a mere clerical error, the records showing the latter date. The plaintiff knew that his expulsion was for the nonpayment of dues; that he had paid his October dues, and had not paid those for December; the records of his lodge showed the grounds of his expulsion, and doubtless the notice sent him did also, although it was not produced in evidence. The defendant's secretary did not elect to rely upon the effect of one of several delayed payments. There was no controversy or question with respect to any dues other than those for December. The mere unintentional error in indicating the month of the plaintiff's default is not a just basis for imposing upon the defendant a liability to one who had ceased to be a member of the order.

The judgment is affirmed.