No. 38,280

A. J. PORTH, *Appellant,* v. LOCAL UNION 201, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al., *Appellees.*

(231 P. 2d 252)

Opinion filed May 12, 1951.

*Lee. R. Meador,* of Wichita, argued the cause and was on the briefs for the appellant.

*W. D. Jochems,* of Wichita, argued the cause, and *Harry N. Routzohn,* of Dayton, Ohio, and *R. E. Angle,* of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This is an appeal from an order sustaining a demurrer to an amended petition, as amended (hereinafter referred to as the petition), in an action to recover actual damages in the amount of $50,000 and punitive damages in a like amount from defendant labor union and certain of its individual members on account of

the alleged wrongful and malicious acts on the part of defendants in ousting plaintiff from membership in the union, and for a mandatory injunction directing defendants to reinstate plaintiff as a member with all attendant rights and privileges.

Another phase of this litigation was before this court in *Porth v. Local Union 201,* 166 Kan. 166, 199 P. 2d 788.

The petition, including exhibits attached thereto, covers some 45 pages of the abstract, but, in view of our disposition of the case, its allegations will not be summarized in detail.

Briefly stated, it alleges that in 1941 plaintiff became a member of Local Union 201 of the United Brotherhood of Carpenters and Joiners (hereinafter referred to as the Local), an unincorporated labor union exercising jurisdiction in Wichita and surrounding territory; that the Local is affiliated with the International organization of the same name; that in 1943 plaintiff was elected the Business Agent and Financial Secretary of the Local, which office he held until December, 1947, and that shortly thereafter he was unlawfully and maliciously ousted from membership as the result of an alleged malicious and unlawful conspiracy entered into by defendants for the express purpose of discrediting him and damaging his reputation and standing among the members of the Local. Then follow lengthy and detailed allegations concerning plaintiff's activities as a delegate to the national convention of the American Federation of Labor held in Chicago in October, 1946, with reference to certain controversial resolutions put before that body which gave rise to correspondence between the president of the United Brotherhood of Carpenters and Joiners of America and the Local, with the result that disciplinary action was taken by the Local against plaintiff, culminating in his ouster. The chronology of these various disciplinary steps is then set out in detail, together with allegations of alleged malicious and arbitrary actions on the part of defendant Local and certain of its individual members.

Defendants' demurrer to the petition, on the ground that it did not state facts sufficient to constitute a cause of action, being sustained, plaintiff has appealed, and in this court he poses three questions:

"1. Does the petition state facts sufficient to establish the existence of a willful and malicious conspiracy among the defendants which resulted in the wrongful ouster of the plaintiff from membership in the union?

"2. Can liability be imposed against the defendant union in its entity as an

unincorporated association even though the entire membership did not participate in the wrongful ouster?

"3. Does the petition allege sufficient facts to show that any effort of the plaintiff to obtain redress by remedies within the union would be futile and a vain form?"

In support of the lower court's ruling defendants argue fourteen separate and distinct points. In our opinion a discussion of only two of them is necessary in order to arrive at a correct disposition of this appeal, and they are:

"13. The constitution, laws and rules of a voluntary association, such as a trade union, constitute a contract between the union and its members, and a member is bound by and presumed to know such constitution, laws and rules.

"14. Plaintiff has no cause of action unless and until he has exhausted the remedies of appeal available to him under the constitution and laws of the union."

Included in plaintiff's petition are excerpts from the constitution and laws of the Brotherhood pertaining to charges and trials, and appeals and grievances. They are:

### "CHARGES AND TRIALS

"A. Section 56. A member must be charged and tried within the jurisdiction of the Local Union or District Council where the offense was committed, where a District Council exists all charges shall be tried before that body. A copy of the verdict must be sent to the Local Union of which he is a member. Any Local Union may suspend a member by a three-fourths vote until charges can be preferred against him and he is regularly tried. A member must exhaust his resources allowed by the Constitution and Laws of the United Brotherhood before taking his case to the civil courts."

### "APPEALS AND GRIEVANCES

"A. Section 57. A member who has a grievance or who has an injustice done him in any way, or any Local Union, District, State or Provincial Council having any grievance, may appeal to the General President for redress, subject to a further appeal to the General Executive Board and a final appeal to the General Convention, except violations of Trade Rules; but in no case shall an appeal act as a stay of proceedings, except as provided in the Constitution and Laws of the United Brotherhood."

Plaintiff frankly concedes that he has not complied with the foregoing provision relative to appeals and grievances and thus did not exhaust his resources allowed by the constitution and laws of the Brotherhood before bringing this action, but attempts to avoid such provision by alleging that any further procedure by him within the organization would be futile and of no effect, and we quote from his petition:

"This plaintiff further states that the General President displayed his ani-

mosity and antagonism toward this plaintiff by refusing to accept any correspondence from this plaintiff in his official capacity as business agent and financial secretary of the Local after April 3, 1947, even though 'this plaintiff was acting as such under orders of this Court and by election of the Local. This plaintiff further states that he has no adequate or reasonable remedy by appeal to the General Convention for the reason that said convention only meets every four years and will not convene until the fall of 1950, and then out of this state and at a great distance from the City of Wichita. Plaintiff further states that the General President will be the presiding officer of the convention and would be in effect reviewing again his own decision. This plaintiff further alleges that in the light of the foregoing facts, this plaintiff was under no obligation whatsoever to appeal his ouster, but that this plaintiff did prepare his appeal and did within 30 days after his ouster, mail said appeal to the General President at his office in Indianapolis, Indiana, by registered mail. That a copy of said appeal was mailed to the defendant Local. That the Local did furnish the plaintiff with a copy of the trial proceedings, but that this plaintiff's registered letter to the General President containing the appeal was returned to this plaintiff marked 'refused.' That more than six months later this plaintiff received a letter from the General President, stating that this plaintiff could appeal by following the above quoted laws, but this plaintiff alleges that he had done more than was required of him, under the circumstances, as herein stated, and any such further attempt to appeal would have been futile, and that this plaintiff has no adequate remedy for his wrongs, except by appeal to this Court."

In this state, as elsewhere (7 C. J. S., Associations, § 11b, p. 34), it is well-settled that the constitution and bylaws of a voluntary association, such as a trade union, constitute a contract between the association and its members, and the rights and duties of the members as between themselves and in their relation to the association in all matters affecting its internal government and management are measured by the terms of such constitution and bylaws. This point was under consideration in the recent case of *Radio Station KFH Co. v. Musicians Ass'n, Local No. 297*, 169 Kan. 596, 220 P. 2d 199, where it was held:

"Voluntary associations have the right to make their own regulations as to admission or expulsion of members, and one who becomes a member assents, by his membership, to the constitution and rules of procedure adopted by such an association. The constitution, rules and bylaws, knowingly assented to, become in effect a civil contract between the parties whereby their rights are fixed and measured. The constitution, rules and bylaws of a voluntary, unincorporated association constitute a 'contract' between the association and its members and the rights and duties of the members as between themselves and in their relation to the association in all matters affecting its internal government and the management of its affairs are measured by the terms of such constitution and bylaws." (*Citing cases.*) (p. 602.)

The law is also well-settled in this state that where the constitution and bylaws of an association, such as the one under consideration, provide for an appeal within the organization from disciplinary action taken against one of its members, such member must exhaust his remedies so given before he can resort to the civil courts for redress. In support of this rule defendants cite numerous decisions from other jurisdictions, but we deem it necessary only to refer to what has been said by this court on the subject. In *Wichita Council v. Security Benefit Ass'n,* 138 Kan. 841, 28 P. 2d 976, it was stated:

"Appellant contends plaintiffs did not exhaust their right of appeal to the national council of the society. When the constitution and laws of a benefit society require an appeal within the society from the ruling of an inferior officer, committee or unit of the society, and such ruling and the procedure therefor have been had in conformity to valid provisions of such constitution and laws, the party aggrieved must exhaust his remedies within the society before resorting to the courts." (Citing cases.) (p. 853.)

See also *Conroy v. Railroad Trainmen,* 102 Kan. 757, 171 Pac. 1161.

With reference to plaintiff's contention that any further action within the organization would have been futile and in vain, we think that his allegation—"that he had done more than was required of him, under the circumstances, . . ."—in the light of other allegations, amounts to no more than a mere naked and unwarranted assumption and conclusion. In fact, he specifically alleges that he received a letter from the General President advising him that he could appeal "by following the above quoted laws," which in itself gives rise to an inference that his first attempt to appeal did not comply with the procedural requirements set forth.

As a member of this organization plaintiff had the right to appeal from any alleged grievance or injustice done him. It was mandatory that he exhaust those remedies within the organization before resorting to a civil court for redress. He did not do so. Courts will not interfere to take jurisdiction of cases involving the disciplining, expulsion or suspension of union members from their unions until those aggrieved have exhausted the remedy and right of appeal available to them within the union.

The ruling of the lower court in sustaining the demurrer to the petition was correct and its judgment is affirmed.