No. 46,325

FLORENCE N. CUNNINGHAM, et al., *Appellees,* v. THE INDEPENDENT
SOAP & CHEMICAL WORKERS OF KANSAS CITY, KANSAS, *Appellant.*

(486 P. 2d 1316)

Opinion filed July 16, 1971.

*Robert S. Fousek,* of Kansas City, Missouri, argued the cause, and *James H. Barnes,* of Kansas City, was with him on the brief for the appellant.

*E. J. Holland, Jr.,* of Spencer, Fane, Britt and Browne, of Kansas City, Missouri, argued the cause, and *J. D. Lysaught,* of Weeks, Thomas, Lysaught, Bingham and Johnston, Chartered, of Kansas City, was with him on the brief for the appellees. *Harry L. Browne* and *Jack L. Whitacre,* of Spencer, Fane, Britt and Browne, of Kansas City, Missouri, *of counsel.*

The opinion of the court was delivered by

SCHROEDER, J: This is an equitable action in which members of a labor organization sought to have the district court determine that the defendant labor organization was not authorized to expel them from membership and to issue an injunction against the defendant union. The lower court found the union was without power to discipline its members by expulsion and granted the in-

junctive relief requested, whereupon the union has duly perfected an appeal.

The facts in the case are not in dispute. The parties have entered into an extended stipulation setting forth the facts governing the case and the necessary exhibits material to the facts.

The Independent Soap & Chemical Workers of Kansas City, Kansas, hereinafter referred to as the union, is an unincorporated association and a labor organization within the meaning of the Labor Management Relations Act, 1947, as amended. (29 U. S. C. A. § 152 [5].) It is not affiliated with any national or international union. It is recognized as the exclusive collective bargaining representative of a bargaining unit composed of certain employees (including the plaintiffs) of Procter & Gamble Manufacturing Company at its plant located in Kansas City, Kansas, which is engaged in an industry affecting commerce as defined in the Labor-Management Reporting and Disclosure Act of 1959. (29 U. S. C. A. § 402 [j].) At all times material hereto the union had approximately 500 members.

The union has had contracts with the company since 1937. In 1964 the parties entered into a contract which provided for reopening the contract by sixty days' notice prior to December 29, 1967. Such notice was given by the union to the company and subsequent thereto a notice to terminate the agreement was given by the union. From December 29, 1967, up to August 2, 1970, the union and the company were unable to arrive at a new agreement.

On or about July 9, 1970, certain employees of Procter & Gamble who were members of the union concertedly refused to work in protest of certain disciplinary action taken by the company, which was the subject of grievances filed by the union. On the morning of July 10, 1970, these employees congregated about the gates of the plant with picket signs and on strike signs. This picket line was not authorized at this time by the union. A majority of the employees reporting for the first shift of work on July 10, 1970, refused to cross this picket line.

On July 10 and 11, 1970, the union scheduled a membership meeting for Sunday, July 12, 1970, and publicized the meeting by announcements made by radio and television media.

Also, on July 10, 1970, Procter & Gamble instituted an action in the Wyandotte district court to enjoin the union from engaging in mass picketing and violence about the entrances of the plant. A

temporary injunction was issued to this effect by the court, but the injunction did not enjoin the strike itself.

On July 12, 1970, a union meeting was held among the members to discuss the strike action and picketing engaged in by certain of its members. At this meeting those members of the union present voted "to strike until the disciplinary action was resolved and the contract negotiations were completed." Approximately 375 members of the union were present and voted on the question.

Florence N. Cunningham, the named plaintiff, and other members in the class described in the petition, were members of the union, some having been members of the union for as long as 20 or 25 years. Some of the employees who voted to expel the plaintiffs were members of the union for 33 years. Each of the class who heard the radio or television announcements of the July 12th meeting had an opportunity to participate in the discussions and vote at this meeting. Subsequently, each member of the class knew the union had voted to strike and concertedly refused to render services. Each knew that the union had directed all members not to work.

Between July 12, 1970, and August 2, 1970, the union was on strike. The union placed pickets at employee entrances to the plant. On August 2, 1970, the union membership called to a meeting pursuant to written mail notices, voted to terminate the strike and the strike was terminated. At this time the terms of a new contract which had tentatively been agreed upon by Procter & Gamble and the union were ratified by the membership.

Section III of the contract pertaining to union membership and collection of dues reads in part:

"1. Any employee who is, or becomes, a member of the Union by signing an authorization card may at his own discretion remain a member in good standing during the life of this Agreement. In case of illness or disability *or leave of absence due to lack of work* dues will be waived until the employee returns to work."

Neither the new contract nor the prior contract entered into in 1964 contained any provision for union security; that is, no employee was required as a condition of employment to become a member of the union.

Between July 12 and August 2, 1970, and while pickets were placed at the entrances to the plant, and the strike was in progress, at various times and on various dates after July 12, 1970, Cunning-

ham and other members of the class returned to work and performed work for Procter & Gamble.

On August 2, 1970, the membership of the union, at a special meeting called by mail notices, voted to direct the bargaining committee to institute proceedings against the members of the class, plaintiffs herein.

On or about August 4, 1970, the union by its bargaining committee notified by certified mail Cunningham and other members of the class that each had been charged with going back to work and crossing the picket line. The notice directed them to appear before the representative body on August 15th.

On August 15, 1970, the representative body met to review the charges made by the bargaining committee. There are approximately 30 members on the representative body, the plaintiff Cunningham and four other members of the class were also elected members of the representative body. Cunningham appeared in person and with counsel and other members of the class appeared by counsel only. However, counsel for Cunningham and all members of the class were denied the right to appear at the hearing.

Counsel for Cunningham and other members of the class left statements with union representatives (which they refused to accept) indicating their representation of the plaintiffs and challenged the jurisdiction of the union to conduct a hearing or to impose disciplinary action.

The representative body recommended that Cunningham and the other members of the class be expelled from the union and such action was taken. Statements made by other members at the August 15, 1970, meeting of the representative body indicated and disclosed that Cunningham and all except two members of the class had in fact crossed the union's picket line and gone back to work while the strike was in progress.

The union maintains no retirement, death benefit, funeral benefit or similar benefit of its own, and thus the members of the class do not have any monetary rights to any funds if such eventualities should occur in the future.

The constitution and bylaws of the union which are a part of the record contain no procedure for appeal of the union action; thus all internal remedies have been exhausted. This action was brought by Cunningham and others in the class in the district court of Wyandotte County where their requested relief was granted. The

court held the union was not empowered, able or authorized to expel the plaintiff and other members of the class under its constitution and bylaws, and it permanently enjoined the union from interfering with, or infringing upon, the membership right of the plaintiff and other members of the class.

The union's constitution and bylaws are unique in that they do not spell out in any manner how or when one becomes a member, nor how or when a member can be expelled, except that a person who fails to pay dues for three consecutive months is deemed to be automatically expelled. The union has no initiation fee and the bylaws do not require that a person who deems himself to be a member take any oath or obligation.

The appellant contends the union exists solely for purposes of representing employees who engage in collective concerted activity for their mutual aid and protection. The union's position is that Cunningham and other members in her class are strikebreakers who sought to destroy the union in its effort to perform the only function for which it was created. *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U. S. 175, 18 L. Ed. 2d 1123, 87 S. Ct. 2001, is cited for the proposition that strikebreaking is the most serious offense a member of the union can engage in " 'for it undercuts the union's principal weapon and defeats the economic objective for which the union exists.' " (pp. 181, 182, footnote 8.)

The *Allis-Chalmers* case, however, does not support the appellant on the point here presented. There the union's constitution and bylaws authorized fines and expulsion of recalcitrants, including strikebreakers. The issue there before the United States Supreme Court was whether disciplinary action by a union against strikebreakers pursuant to its constitution and bylaws was an unfair labor practice under Section 8 (*b*) (1) (A) of the National Labor Relations Act of engaging in conduct "to restrain or coerce" employees in the exercise of their right guaranteed by Section 7 to "refrain from" concerted activities.

Section 7 of the Labor Management Relations Act, 1947, as amended, provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor orga-

nization as a condition of employment as authorized in section 158 (*a*) (3) of this title." (29 U. S. C. A. § 157.)

Section 8 of the National Labor Relations Act provides in part:

"(*b*) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; . . .*" (29 U. S. C. A. § 158 [*b*] [1] [A].) (Emphasis added.)

The appellees contend the issue in this case is a simple one of contract interpretation—*i. e.,* whether the union's constitution and bylaws give it the power to discipline them by expulsion.

The trial court in its memorandum opinion on November 10, 1970, found as follows:

"(1) There is no rule in the defendant's constitution and bylaws regarding the procedure, the grounds, or the right of the union to terminate membership other than a provision (not here involved) that membership is automatically terminated if dues become more than three months in arrears;

"(2) The union may not punish its members for violations of implied obligations and this Court does not recognize so-called 'implied offenses' and thereby rewrite the union's constitution and bylaws;

"(3) The union, in its relations with its members, is governed by its constitution and bylaws and the rights and duties of the members as between themselves and in their relationship with the union in all matters affecting internal government and the management of its affairs must be determined by the terms of such constitution and bylaws;

"(4) In the absence of reasonable rules and regulations in the defendant's constitution and bylaws, defendant has no authority or power to discipline its members by expulsion;"

It is almost universally accepted that the relationship between a union and its members is a contractual one. As the source of the union's disciplinary authority lies in the contractual relationship between the organization and its members, it is to the rules of contract law that we must turn in evaluating the union's conduct. (See *International Association of Machinists and Aerospace Workers, Local Lodge No. 504 (Arrow Development Co.) and David O'Reilly,* 1970 CCH NLRB [ ¶ 22,260] 185 NLRB 22. )

The foregoing statement of the law clearly reflects the congressional intent expressed in the Labor-Management Reporting and Disclosure Act of 1959 which says the equal rights of members of a labor organization should only be "subject to reasonable rules and

regulations in such organization's constitution and bylaws." (29 U. S. C. A. § 411 [a] [1].)

Since this is a matter of contract law it is essentially a question of state law. To this proposition both parties accede. The Labor-Management Reporting and Disclosure Act of 1959 omits any attempt to preempt state law in this area but instead says that state remedies continue to prevail. (29 U. S. C. A. § 413.)

While there is no Kansas case directly in point, this court has adopted the theory that the relationship of voluntary associations with its members is governed by contract law. It makes no difference whether the articles of agreement of the association are called a constitution, charter, bylaws or any other name. In 1950 this court in *Radio Station KFH Co. v. Musicians Ass'n, Local No. 297*, 169 Kan. 596, 220 P. 2d 199, discussed the contract relationship at some length as follows:

"Voluntary associations have the right to make their own regulations as to admission or expulsion of members, and one who becomes a member assents, by his membership, to the constitution and rules of procedure adopted by such an association. The constitution, rules and bylaws, knowingly assented to, become in effect a civil contract between the parties whereby *their rights are fixed and measured. . . ."* (p. 602.) (Emphasis added.)

The court went on to discuss specifically the relationship between the association and its individual members regarding its internal affairs:

". . . The constitution, rules and bylaws of a voluntary, unincorporated association constitute a 'contract' between the association and its members and the rights and duties of the members as between themselves and in their relation to the association in all matters affecting its internal government and the management of its affairs are measured by the terms of such constitution and bylaws. . . ." (p. 602.)

Another case in accord is *Porth v. Local Union 201*, 171 Kan. 177, 231 P. 2d 252.

Thus, the contract manifest in the constitution and bylaws governs this matter.

Other states which have adopted the contract theory have essentially disposed of the question here presented in favor of the appellees. In *Sweetman v. Barrows*, 263 Mass. 349, 161 N. E. 272, 62 A. L. R. 311, the court found the plaintiff had been wrongfully expelled because of the absence of enabling provisions in the bylaws. The court held the member of the union "was entitled to fair treatment and could not be expelled and deprived of his membership

except as authorized by the by-laws of the association." (p. 355.)

In a similar decision, *Smetherham v. Laundry Workers' Union*, 44 C. A. 2d 131, 111 P. 2d 948, the California court directed reinstatement of membership and awarded damages to an employee who was improperly expelled from the union, stating:

". . . It is true that courts will not interfere with the disciplining or expelling of members of such associations where the action is taken in good faith and in accordance with its adopted laws and rules. But if the decision of the tribunal is contrary to its laws or rules, or it is not authorized by the by-laws of the association, a court may review the ruling of the board and direct the reinstatement of the member. . . ." (pp. 135, 136.)

Other cases in accord are *Dingwall v. Amalgamated Assn. Etc.*, 4 Cal. App. 565, 88 Pac. 597; and *Browne v. Hibbets*, 290 N. Y. 459, 49 N. E. 2d 713.

The appellant in its brief says:

"It must be emphasized this *is not* a situation where a union's constitution specifically sets forth grounds for expulsion and the union then proceeds to expel a member for reasons not listed therein. This is a case which should be determined on equitable considerations which have been expressed in similar situations by other courts."

From this premise the appellant would imply rules for the expulsion of members in the constitution and bylaws and further confer implied disciplinary powers upon the union. It relies on *Price v. N. L. R. B.*, 373 F. 2d 443, 447 (9th Cir. 1967), where a member sought to attack the union's position as bargaining representative, which in a very real sense was an attack on the very existence of the union.

The appellant argues a strikebreaker violates a fundamental rule of unionism and can be expelled, and contends there is a fundamental right to expel a member for a substantial violation of the union's purpose. (Citing *Polin v. Kaplan*, 257 N. Y. 277, 177 N. E. 833.)

The appellant argues the concept that an unincorporated association has the inherent right to expel members for deliberate violations of a fundamental obligation to the association is expressed by writers on codes of parliamentary procedure. (Citing, Robert's Rules of Order, Newly Revised, p. 543.)

The most recent case of this court on the expulsion of a member from a voluntary association is *Brooks v. Petroleum Club of Wichita*, 207 Kan. 277, 484 P. 2d 1026. There, however, the action taken to

expel the member was in substantial compliance with the bylaws of the club.

The great majority of courts have refused to look beyond the union constitution and bylaws and have emphatically denied the power of the union to punish for violations of implied obligations. (*Summers*, Legal Limitations on Union Discipline, 64 Harv. L. Rev. 1049, 1059-1060.)

In *NLRB v. Allis-Chalmers Mfg. Co.*, supra, the United States Supreme Court said:

"In addition, the judicial view current at the time § 8 (b) (1) (A) was passed was that provisions defining punishable conduct and the procedures for trial and appeal constituted part of the contract between member and union and that 'The courts' role is but to enforce the contract.' In *Machinists v. Gonzales*, 356 U. S. 617, 618, we recognized that '[t]his contractual conception of the relation between a member of his union widely prevails in this country. . . .' " (p. 182.)

In order to determine the instant case in favor of the union it would be necessary to imply a violation of union rules and then permit the assertion of an implied power to expel members for this implied violation. Here the constitution and bylaws of the union contain no prohibition against crossing a picket line and, more significant and determinative in this case, contain no authorization for the union to expel members for any reason.

In the instant case there is an additional and controlling factor why the union has no authority to expel members and deprive them of a voice in bargaining with the company, administering the contract and handling day-to-day grievances. The contract between the company and the union was ratified by the members of the union on the 2nd day of August, 1970, whereas the meeting of the representative body to expel Cunningham and other members of the class was not held until the 15th day of August, 1970. The contract between the company and the union establishes only two requirements for membership in the union: (1) the signing of an authorization card; and (2) payment of dues. If these two requirements are met (and there is no factual dispute concerning this) then continuation of membership is up to the discretion of the individual member. This agreement which the union has with the company expressly rejects any implied authority of the union to impose other requirements on membership. No implied powers exist and this provision explains why the union bylaws do not have provisions governing expulsion of members for reasons other than

nonpayment of dues. The union here seeks to destroy what it expressly agreed to in the collective bargaining agreement—that the individual discretion of each member with respect to continuation of membership would be binding.

The judgment of the lower court is affirmed.

FROMME, J., not participating.