## BREEDEN DODGE, INC. *v.* ACME INDUSTRIAL LAUNDRY, INC.

CA 80-142　　　　　　　　　　　　　601 S.W. 2d 239

Court of Appeals of Arkansas
Opinion delivered June 25, 1980
Released for publication July 8, 1980

*Warner & Smith*, by: *Dorsey M. Ryan*, for appellant.

*Shaw & Ledbetter*, by: *James A. Arnold, II*, for appellee.

MARIAN F. PENIX, Judge. Breeden Dodge, Inc. and Acme Industrial Laundry, Inc. executed a "Preferred Risk Agreement" on August 3, 1977. The Agreement provided that, for a term of two years, Acme would furnish uniforms to Breeden's Service Department employees and Breeden would pay a fee for Acme's services in supplying and laundering the uniforms and servicing the account. The contract provided Breeden could cancel its remaining obligations prior to the end of the two year term by giving thirty (30) days' written notice of its intention to cancel and, thereafter, purchasing the uniforms Acme had purchased and provided for Breeden's employees. On August 14, 1978 Breeden notified Acme by letter of its intention to cancel as of September 15, 1978. However, Breeden refused to purchase the uniforms. Acme sued Breeden to recover a total of $2,286.50. The jury returned a verdict for Acme in the amount of $1,896.00. Breeden had moved for a directed verdict at the close of Acme's case in chief. Breeden appealed.

Breeden contends the Court erred in not granting a directed verdict. The interpretation placed upon Paragraph 9 of the Contract is the crux of this case. Paragraph 9 provides:

> 9. Should the Customer desire to cancel the service during the term of this agreement, Customer agrees to purchase the stock of garments (shirts, pants, jackets, etc.) as listed above or added thereto that are provided for use of Customer or his employees from the Company at prices listed below. In the event of such cancellation, Customer must give thirty (30) days written notice of intention to so cancel to the Company, and agrees to purchase garments which are the subject matter of this agreement at the following prices: $12.00 per suit; $5.50 per shirt; $6.50 per pair of pants; $15.00 per jacket.

Breeden alleges Paragraph 9 is not enforceable as a liquidated damages clause, but is void as a penalty and because Acme presented no evidence of actual damages.

Paragraph 9 does not specify damages due for breach of the parties' agreement. It provides a means by which Breeden could voluntarily terminate the contractual relationship

before the end of the two year term. Breeden did not breach the Contract by terminating Acme's service before the end of two years — the Contract gave Breeden the right to terminate early. However, this right to terminate was conditioned upon Breeden's reimbursing Acme for the uniforms Acme had purchased for Breeden. Breeden failed to meet one of the conditions for early termination. Acme was entitled to recover an amount Breeden contracted to pay if Breeden did in fact elect to terminate prior to the end of the full two year term.

We hold Paragraph 9 is enforceable as a valid contract which afforded the customer Breeden the valuable right to early termination conditioned upon Breeden's purchase of the uniforms.

If we were to assume Paragraph 9 is a liquidated damages clause, it is still valid. A contractual stipulation for payment of a designated sum upon default will be sustained as liquidated damages where it appears the damages will be uncertain and difficult to ascertain. See *Foran* v. *Wisconsin and Arkansas Lumber Co.*, 156 Ark. 346 (1923). Acme's witness testified it would be impossible to calculate actual damages were it not for Paragraph 9. The Contract was for a two year period. It required Acme to supply uniforms not only to the employees initially listed on the Contract but also to all of Breeden's new employees subsequently added to the service. Breeden had a continuous turnover in employees and during the one year period of the Contract twenty-seven (27) new employees were added at one time or another. Even if we don't consider Acme's overhead and lost profits, clearly the fluctuation in the number of employees covered by the service contract would make ascertainment of damages difficult. We find the Contract in question is a suitable one for stipulation of damages.

Once we determine the stipulation is suitable we must decide whether the amount stipulated is reasonable under the circumstances. The Contract provided only those uniforms being provided at the time of termination must be purchased. At the time of termination Acme was providing eleven men with shirts. During the one year term Acme had supplied twenty-seven different employees. The number specified is

reasonable. Rather than seeking reimbursement for all uniforms which had ever been placed in service or trying to estimate the number which would be provided during the remainng twelve months, the actual number at time of termination is specified. We find this to be reasonable.

The figures in Paragraph 9 represent the average cost of each garment. This is perhaps the only practical measurement of the value of each garment. An average cost eliminates the necessity of an individual evaluation of the uniforms which would be a very difficult task. We hold such a measurement to be reasonable.

Acme's witness testified that at no time in the two year contracts would his company make more money if the customer cancelled and bought the uniforms at the prices specified in Paragraph 9 than the company would make if the customer completed the term of the Contract. He further testified Acme's profits are realized by establishing and maintaining a long-term, continuous relationship with the customer rather than instituting a service and then selling the customer the uniforms.

We find the Trial Court did not err in overruling Breeden's Motion for Directed Verdict. We therefore affirm the Jury Verdict and the Judgment entered thereon in favor of Acme.

Acme has asked for reasonable attorneys' fees and printing costs incurred in its preparation of a Supplemental Abstract as authorized by Rule 9(e)(1) of the Rules of the Supreme Court and the Court of Appeals. Although the abstract of Mr. Freeman's testimony is not as detailed as it might be, we do not find we were prevented from adequately reviewing and considering the appeal upon its merits. We have encouraged counsel to avoid surplusage. In the case at hand we find the appellant's brief is a result of Breeden's counsel striving to include only that portion of lengthy testimony considered pertinent and necessary to the resolution of this appeal. Therefore we deny Appellee's request for costs and fee for preparation of the Supplemental Abstract.

affirmed.

WRIGHT, C.J., and NEWBERN, J., dissent.

ERNIE E. WRIGHT, Chief Judge, dissenting. I disagree with the majority in affirming this case.

Although paragraph 9 of the uniform rental and laundry contract purports to obligate the appellant to purchase the uniforms supplied by appellee under the contract, in essence paragraph 9 of the form contract supplied by appellee attempts to provide for liquidated damages should appellant terminate the contract prior to the end of the two year term. It is clear from the contract and the evidence appellee is in the business of renting and providing laundry service for employees of business establishments, and is not in the business of selling merchandise. The only witness for appellee characterized the amount sued for as damages. The issue to be determined on appeal is whether paragraph 9 of the contract, which is set out in the majority opinion, is a valid and enforceable provision for liquidated damages or in the nature of a penalty as contended by appellant. If it is the latter, the court erred in failing to direct a verdict for appellant.

Appellant concedes parties to a contract may stipulate in advance a sum to be paid for loss resulting from a breach of a contract and that such provision is enforceable unless it constitutes a penalty, in which event it is unenforceable.

The clause in issue requires appellant to purchase the garments it was using pursuant to the contract at the time of cancellation for the same price regardless of whether the rental contract was cancelled at the end of one month or at the end of 23 months. If the contract were cancelled with only one month of the contract left, the appellee would under the garment purchase clause be entitled to considerably more money that it would have received in rentals if the contract ran its full term. In *Montague* v. *Robinson*, 122 Ark. 163, 182 S.W. 558 (1916), it was held that the contract will be construed as stipulating for a penalty, when it is agreed the same damages would be recoverable when the contract is only sub-

stantially performed as would be recoverable in the event of total failure of performance.

The evidence shows appellee sets its rental-laundry charges to compensate for its services and recoup its uniform investment costs over a two year period. The average uniform life is considered to be three years.

The evidence is undisputed the uniforms supplied appellee were in part new and in part used, taken from the large stock of garments appellee keeps on hand in the course of its business.

The provision in question was not related to the actual damage appellee may have sustained, if any, by early cancellation. It would require appellant to purchase the uniforms at the same price whether the contract had been cancelled at the end of one month or at the end of twenty-three months. There is no indication it was the desire or intention of appellant to contract to purchase uniforms. All the evidence and circumstances indicate the purpose of the contract on the part of appellant was to secure a useful service, and the purpose of the appellee was to sell its service at a profit. It appears the garment purchase clause was inserted in the contract by the appellee for the purpose of imposing an obligation in the way of a penalty upon the appellee if it should terminate the contract before the expiration of the term, and that the amount the clause would require appellant to pay under such circumstances has no relation to any actual damages appelle might suffer because of the early contract termination.

If the clause in question had provided upon cancellation for payment of a pro-rata part of the stipulated garment price based on the length of time the contract should be in force at the time of cancellation, the provision might well have been a valid stipulation for liquidated damages.

No evidence of actual damages sustained by appellee as a result of early termination was offered.

In my view the court erred in failing to construe the con-

tract clause in issue as a penalty provision and in failing to direct a verdict for appellant absent proof of any actual damages.

I would also point out the evidence is undisputed appellee first breached the contract in adding to its charges to appellant amounts up to $14.10 per invoice for "Pollution Control Charge." The contract authorized no such extra charge. Also, I am unable to reconcile the number of shirts, 169, and the number of pants, 158, for which appellee sought payment with the number of garments specified in the contract or with the fourteen or fifteen employees of appellee who were being supplied with uniforms at termination of the contract.

Appellee's complaint and testimony dealt with the total number of garments it claimed to be furnishing appellant at the time of the termination of the contract rather than the specific uniforms provided pursuant to the contract sued upon. It is undisputed appellee was already supplying appellant with uniforms and laundry service prior to the date of the contract in evidence providing for some 28 additional uniforms and the suit is based on the one contract in evidence. Appellee offered no evidence attempting to separate the uniforms actually furnished under the contract sued upon from the uniforms it continued to furnish under the previously existing arrangement. The jury would have to speculate in arriving at an amount even if the contract provision in question were deemed a valid liquidated damage provision.

I would reverse.

NEWBERN, J., joins in this dissent.