## Joe B. REED, Executor of the Estate of Ollie BEAVER, Deceased *v.* Kenyon WRIGHT

CA 80-154                                                 603 S.W. 2d 422
Court of Appeals of Arkansas
Opinion delivered August 27, 1980

*James R. Jackson*, for appellant.

*Evans, Ludwig & Evans*, by: *James E. Evans, Sr.*, for appellee.

STEELE HAYS, Judge. Before us is the question of whether the trial court properly granted a motion for summary judgment to the buyer in an action by the seller to recover the purchase price of land. We have come to the conclusion, with some difficulty, that the court erred in ruling as a matter of law that the seller could not recover under the contract.

In reviewing the propriety of granting summary judgment, we must view the allegations of the complaint and the plaintiff's affidavit in the light most favorable to the plaintiff, resolving all doubts and inferences in his favor. *Deltic Farm and Timber Company* v. *Manning, Adm'x.*, 239 Ark. 264, 389 S.W. 2d 435 (1965), *Russell* v. *City of Rogers*, 236 Ark. 713, 368 S.W. 2d 89 (1963). In the light of these cases, and others of similar vein, the following statement of facts is deliberately stated in accordance with appellant's view of the case. Indeed, the defendant (appellee) has not controverted any part of the complaint of affidavit, notwithstanding the rule that summary judgment is an extreme remedy and the burden of demonstrating the non-existence of a genuine fact issue is his. *Wirges* v. *Hawkins*, 238 Ark. 100, 378 S.W. 2d 646 (1964).

Mrs. Ollie Beaver owned a life estate in one hundred acres in Benton County, which she acquired by surviving her husband, who died many years earlier. The remainder belonged to other heirs, one or more of whom contacted Mrs. Beaver in early 1977 regarding a sale to the remaindermen or proposing that she join with them in a sale of the entire fee. No sale materialized and subsequently Mrs. Beaver was contacted by Kenyon Wright. Mr. Wright informed her that he had purchased the remainder interest and wanted to acquire her life estate. She declined his offer to lease the land or to ob-

tain its use during her life in some other fashion, although she did reduce her asking price, and in early 1978 a verbal agreement was reached for the sale of her life estate for $6,000.00, payable with interest in three annual installments. The contract was prepared by the buyer's attorney and signed on January 24, 1978. It provided that the seller agreed to sell "all her interest" in the land to the buyer upon the following conditions:

1. The buyer agrees to pay to the seller for her interest in the above lands the sum of $6,000.00 plus interest in the sum of $600.00, making a total sum of $6,-600.00 to be paid as follows:

$2,200.00 on 1st day of March 1978, and the remaining sums to be paid as follows: $2,200.00 one year after the down payment above stated, and $2,-200.00 two years after the above date of the down payment.

2. Buyer is to get full possession of the lands on March 1, 1978.

3. In the event the buyer fails or refuses to pay any payment above stated, or the interest as due, due to the difficulty and uncertainty of determining the actual damages sustained by the seller, it is agreed that seller shall retain all sums paid to her as liquidated damages, and this contract shall terminate and end, and seller shall be entitled to immediate possession of the lands, and it is understood that time is of essence in this agreement.

The first installment was paid on March 1, 1978, and possession taken by the buyer. In August, the seller died and the buyer refused to pay the installment which became due on March 1, 1979. The buyer knew at all times (so plaintiff's affidavit asserts) that he was required to pay the sum of $6,-600.00 to the seller or her estate if she did not live until the purchase price was fully paid. Suit was filed by the plaintiff, as executor under the will of Mrs. Beaver, to recover the balance of $4,400.00 under the contract.

The defendant's response to the complaint was a motion for summary judgment, which the court granted, stating that there was no issue of material fact and that the defendant was entitled to judgment as a matter of law. We hold that it was error to dispose of the case by summary judgment. Only if the plaintiff could not recover under any possible theory of the law or the facts should summary judgment be granted and we are unable to eliminate all such possibilities. Indeed, one rather obvious possibility is that these parties simply agreed that the buyer would pay the sum of $6,000.00, plus interest, for seller's interest in the land and that buyer would pay the purchase price in three installments. If this is what the parties agreed on, the plaintiff has been deprived of the opportunity of making proof to that effect by the granting of summary judgment. The opinion in *Deltic Farm and Timber Company* v. *Manning*, supra, citing *Winter Park Telephone Company* v. *Southern Bell Telephone and Telegraph Company*, 181 F. 2nd 341 (5th Cir. 1950) states:

> Further, where the evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypothesis might reasonably be drawn and reasonable men might differ, *then a motion for a summary judgment is not proper*. (Emphasis supplied.)

The appellee argues that paragraph 3 provides a clear remedy in the event of default and the courts should not rewrite contracts that parties of sound mind have freely entered into, citing a number of decisions supporting that view. [*Rector, Et Al* v. *Droman*, 253 Ark. 751, 489 S.W. 2d 1 (1973); *Petree* v. *Petree*, 211 Ark. 654, 201 S.W. 2d 1009 (1947); *McCargo* v. *Steel*, 160 F. Supp. 7 1958).] But that argument ignores the fact that this contract also unequivocally obligates the purchaser to pay the sum of $6,600.00, which is as much a part of the contract as paragraph 3. The obligation to pay the purchase price is entirely unconditional and is not limited in any manner. It recites in clear and simple language that the purchaser will pay $6,600.00 for all the seller's interest in the land. It does not say she must be alive on the installment due dates, or otherwise restrict the obligation to pay the purchase price. Hence, the argument that the trial court was simply enforcing what the parties themselves agreed upon is not per-

suasive. It would have been a simple matter for the contract to recite that should the seller die before full payment, no further payments would be due, if that had been the intent. One must examine paragraph 3 not only from the standpoint of its own language but from the standpoint of the entire contract. *Dent, Adm'r* v. *Industrial Oil and Gas Company*, 197 Ark. 95, 122 S.W. 2d 162 (1938). We conclude that paragraph 3 and the rest of the contract cannot be reconciled for the reason that what it gives at one point, it takes away at another, and we are left with a strong and lingering doubt as to what was the true intention of these parties.

The difficulty in construing this contract, we believe, lies in the fact that on the surface paragraph 3 gives the innocent impression of being clear and explicit and, hence, the reader is beguiled to conclude that the applicable rule of law should be, as appellee so strenuously argues, that contracts are to be construed according their plan meaning. On the surface paragraph 3 appears to bestow a benefit upon the seller in the event the buyer defaults in any payment of principle or interest by giving the seller the remedy of recovering the land. But below the surface lies the unspoken aspect that if the seller is dead when buyer defaults she can recover *nothing* — neither the land nor the purchaes price and, thus, an apparent benefit becomes in reality a bane. We should add that there is nothing objectionable to such an arrangement where the parties so intended, but such an intention should bemade clear in the contract or established by extraneous evidence if the contract permits a doubt that this was the intent. Where the payment of the purchase price for an interest in land is unconditional, then a cause of action for its recovery ought not to be denied the seller by summary judgment, absent anything to suggest that the parties intended that the seller's *only* remedy would be in accordance with paragraph 3.

This contract must be construed not simply in accordance with paragraph 3 but from its "four corners" and when the entire contract is construed we are satisfied that enough doubt and ambiguity arises to make it inappropriate to summary judgment. *Schnitt* v. *McKellar, Et Al*, 244 Ark. 377, 427 S.W. 2d 202 (1968); *Wynn* v. *Skear & Phillips Oil Company*, 254 Ark. 332, 493 S.W. 2d 439 (1973). In *Stoops* v. *Bank of Brinkley*,

146 Ark. 127, 225 S.W. 593 (1920), Mr. Justice Hart stated:

> Where the meaning of the language of the contract is doubtful, or is susceptible of more than one meaning, parol evidence may be resorted to to show the real nature of the agreement. The admission of such testimony is, within the meaning of the terms employed in the written contract, to render certain that which is uncertain and to determine just what in fact the writing was intended to express.

Our view in this respect is strengthened by the fact that it was the buyer's attorney, not the seller's, who drafted this contract and all doubts are to be resolved against the buyer. *Stevenson* v. *Marques*, 241 Ark. 321, 407 S.W. 2d 321 (1966). *Stevens* v. *Cherry Hill Special School District No. 10*, 206 Ark. 832, 177 S.W. 2d 722 (1944).

Appellee relies upon the case of *Edwards* v. *Perdue*, 177 Ark. 241, 6 S.W. 2d 20 (1928), as the "sole substantive question presented by this appeal." In *Edwards*, the parties placed a lease agreement in escrow, providing that it would be delivered to the prospective lessee after he had completed several installment payments. Not all the installments were paid and the prospective lessor brought suit to recover the balance. The trial court construed the agreement in a manner favorable to the plaintiff and defendant appealed. The Supreme Court reversed, stating that the contract was not ambiguous and that the prospective lessor's remedy in the case of default was recovery of the lease with no further obligation or liability on the part of either. The distinguishing element between the decision of *Edwards* v. *Perdue* and the case before us it at in *Edwards* the agreement was held in escrow and the leasehold remained in escrow, as opposed to the prospective lessee having obtained possession of the leasehold. Here, the buyer came into full and complete possession of the land under the contract, the objective he sought and for which he bargained.

Finally, we decline to pass on whether paragraph 3 is a penalty or a valid liquidiated damage clause for several

reasons: first, it is not clear whether the trial court considered paragraph 3 in that light and reached the conclusion that it was valid, or merely accepted what it took to be the clear language of the paragraph; moreover, this issue, as in contracts generally, turns on the question of intention of the parties and that has not yet been developed in this record. The decision in *Lasater* v. *Western Clay Drainage District*, 177 Ark. 997, 8 S.W. 2d 502 (1928), citing a number of cases, states that:

> As a very general rule, the intention of the parties will control as to whether a provision in a contract is for a penalty or liquidated damaages. The primary rule in the construction of contracts requires the court to ascertain and give effect, where possible, to the mutual intention of the parties.

See also, *McIlvenny* v. *Horton*, 227 Ark. 826, 302 S.W. 2d 70 (1957). As appellee points out, the mere fact that the words "liquidated damages" are used in the contract is not controlling. *In re LAMMERS, Bankrupt*, 211 F. Sup. 448 (W.D. Ark. 1962).

The case is reversed and remanded for further proceedings, and since the case is to be retried, both parties are entitled to the opportunity of developing those facts and circumstances they believe are relevant.

HOWARD and NEWBERN, J.J., dissent.

DAVID NEWBERN, Judge, dissenting. There is no remaining issue of fact to be resolved in this case, and thus summary judgment was appropriate. *A. R. Civ. P., 56.* The intention of the parties is very clearly expressed in their contract. I cannot understand the unwillingness of the majority to recognize that paragraph 3 is no more than a condition subsequent attached to paragraphs 1 and 2. Followed to its logical conclusion the majority opinion would make every contract containing a conditon "ambiguous."

The contract is not ambiguous. The condition made it aleatory, but that does not affect its validity. If it did, we

could no longer have insurance contracts. See generally, Corbin, *Contracts*, § 728 (1960). The fact that the parties used the term "liquidated damages" is irrelevant. *Rest. Contracts*, Comment (b.) to § 325 (1932).

Although I could dwell upon the majority opinion's hint that the judgment rendered below was somehow unfair, I prefer to point up what I believe to be its more concrete and central fallacy. The majority opinion would permit the trial court to ignore paragraph 3 of the contract. As noted above, I see no need to choose between paragraph 3 and the remainder of the instrument, and I find particularly troublesome the suggestion that this court might stand still for the enforcement of all but a portion of a contract when there is not even a suggestion that the part thus to be excluded is for any reason unenforceable.

Had this contract been interpreted below as presenting a question of intent and a jury, let us say, had ascertained the intent of the parties was to be bound by paragraphs 1 and 2 but not 3, the judgment based on such a decision would have been reversible for the reason stated by the majority here, *i.e.*, interpretation must be "from the standpoint of the entire contract."

For the reasons stated, I respectfully dissent.

Judge Howard joins in this dissenting opinion.