R.E. JOHNSON, et al. *v.* Michael U. JONES, et al.

CA 89-241                                    807 S.W.2d 39

Court of Appeals of Arkansas
Division II
Opinion delivered February 20, 1991
[Rehearing denied March 27, 1991.]

*Pamela D. Walker*, for appellant.

*Arnold, Grobmyer & Haley*, by: *Ronnie A. Howell*, for appellees Jack A. Nahlen and Michael U. Jones.

GEORGE K. CRACRAFT, Chief Judge. This appeal presents a question of whether the circuit court properly refused to enforce fines imposed by a labor union against some of its members, appellees Jack Nahlen, Steven Smith, and Michael Jones, for working during a strike. We hold that, under the facts of this case, the circuit court did not err in refusing to enforce the fines.

On April 24, 1990, we certified this case to the Arkansas Supreme Court as one involving an issue of significant public interest and involving a legal principle of major importance. Certification was refused by that court on April 30, 1990. Jurisdiction of the case is, therefore, in the Court of Appeals.

On September 19, 1982, the Brotherhood of Locomotive Engineers went on strike against the Missouri-Pacific Railroad; this strike continued until September 22, 1982. Appellees, employees of the railroad, were members of the American Train Dispatchers Association (ATDA) at the time of the strike. Appellees continued to work for the railroad during the strike and were charged with breaching the union's constitution and by-laws. In 1983, the union held an internal trial on the charges brought against appellees, who did not attend. Appellees were found to have accepted employment to perform service as train dispatchers during the strike and were found guilty of violating Article XIV, Section 1, Paragraphs (e) and (i) of the union's constitution and by-laws. Each appellee was issued a reprimand and fined $1,000.00. Article XIV, which is styled "Misconduct and Penalties," provides in pertinent part:

> Sec. 1.
>
> Except as otherwise provided in this Constitution & By-Laws, any officer or member of this Association, after charges, trial and conviction on any of the following offenses, . . . may be reprimanded, fined, removed from office, and/or suspended or expelled from membership as the evidence may warrant. . . . The following shall constitute misconduct:
>
> . . . .
>
> e. Crossing a picket line or accepting employment on any railroad to perform service in any capacity where a strike or lockout is in progress.

. . . .

    i. Conduct unbecoming a member of this Association. . . .

Appellees did not pay or internally appeal the fines.

On April 21, 1986, appellants, representatives of the union, filed a complaint in circuit court to enforce the fines. Appellees asserted in their answers that appellants could not enforce the fines in court. In his answer, appellee Jones asserted that his fine was unreasonable. On January 12, 1987, appellants moved for summary judgment. In his response, appellee Jones asserted that the fine was levied in violation of the union's constitution and by-laws. Appellees Nahlen and Smith asserted in their response that the union could not enforce a penalty under the contract law of this state and also moved for summary judgment.

On February 9, 1989, the circuit court entered summary judgment in favor of appellees. In doing so, the court assumed, as alleged by appellants, that appellees violated Article XIV but found that the union could not enforce these fines in the courts of this state:

> It is clear from the language of the contract itself [Appellants] are seeking to enforce a penalty. Looking at the [Appellants'] actions which show their own interpretation of the contract, the Notice sent to [Appellees] used the term "fine." Under the laws of the State of Arkansas, a contractural [sic] provision for a penalty is not enforceable. *McIlvenny* vs. *Horton*, 227 Ark. 826, 302 S.W.2d 70, (1957). Contractual provisions for penalties violate the public policy of the State of Arkansas. *MoPac R.R. Co.* vs. *Winburn Tile Mfg. Co.*, 461 F. 2d 984 (8th Cir. 1972). It is clear from the language of the parties' contract that a penalty is assessed rather than liquidated damages. Thus, the contract is not enforceable.

On appeal, appellants assert that the circuit court erred in refusing to enforce the fines. Appellants argue that the fines are not penalties but are simply liquidated damages, which are enforceable in the courts of this state. Appellants argue that the word "penal" does not necessarily determine whether a provision is for a penalty or liquidated damages. They also argue that

federal labor law preempts state law in this instance.

■■ A contract will be construed as properly stipulating for liquidated damages where, from a prospective view of the contract, it appears (1) that the parties contemplated that damages would flow from a failure to perform the contract; (2) that such damages would be indeterminate or difficult to ascertain; and (3) that the sum bears some reasonable proportion to the damages which the parties contemplated might flow from a failure to perform the contract. *Alley* v. *Rodgers*, 269 Ark. 262, 599 S.W.2d 739 (1980). Where the sum agreed upon bears no reasonable relationship to the damages which likely would result following a breach, the amount agreed upon will be held to be a penalty. *McIlvenny* v. *Horton*, 227 Ark. 826, 302 S.W.2d 70 (1957); *Muradian* v. *Haley*, 12 Ark. App. 138, 671 S.W.2d 210 (1984). *See also McMaster* v. *McIlroy Bank*, 9 Ark. App. 124, 654 S.W.2d 591 (1983); *Hearrell* v. *Rogers*, 7 Ark. App. 230, 646 S.W.2d 703 (1983). If a stipulation is for a penalty, rather than liquidated damages, it cannot be enforced in the courts of the state of Arkansas. *Lane* v. *Pfeifer*, 264 Ark. 162, 568 S.W.2d 212 (1978); *Canadian Mining Co.* v. *Creekmore*, 226 Ark. 980, 295 S.W.2d 357 (1956). *See also Breeden Dodge, Inc.* v. *Acme Indus. Laundry, Inc.*, 269 Ark. 837, 601 S.W.2d 239 (Ark. App. 1980).

■ In determining whether a provision in a contract is for a penalty or for liquidated damages, generally, the intention of the parties will control *Lasater* v. *Western Clay Drainage Dist.*, 177 Ark. 997, 8 S.W.2d 502 (1928); *Reed* v. *Wright*, 270 Ark. 45, 603 S.W.2d 422 (Ark. App. 1980). Whether the parties intended a provision of a contract to be a penalty or a stipulation for liquidated damages is a question of fact. *McIlvenny* v. *Horton, supra.* The mere fact that the words "liquidated damages" are used is not controlling. *Reed* v. *Wright, supra.* Nor is use of the word "penal" controlling, but it must be considered in determining the intention of the parties to the contract. *Montague* v. *Robinson*, 122 Ark. 163, 182 S.W. 558 (1916). Additionally, the court must look at the language of the contract, the subject of the contract in its surroundings, the ease or difficulty of measuring the breach in damages, and the sum stipulated. *McIlvenny* v. *Horton, supra.*

■ Here, it is readily apparent that the ATDA's constitu-

tion and by-laws provide for a penalty in the event of breach. Article XIV provides for "penalties and fines"; it does not set forth *any* sum of money which may constitute a fine in the event of breach by the union member, nor is there a maximum fine that may be levied. Hence, this provision cannot be construed as one providing for liquidated damages. We therefore agree with the circuit court's finding that the constitution and by-laws did indeed provide for a penalty in the event of breach by the union members and that, under Arkansas law, the fines against appellees cannot be enforced.

Appellants next argue that state contract law is preempted by federal labor policy in the enforcement of a union's fines against its members for working during a strike. We cannot agree.

Federal law does not control every issue that may arise in the context of labor relations:

> It has authoritatively been decided that the federal legislation as to labor-management relations did not preempt full jurisdiction in the field and leaves an area in which state action is permissible; and the states still have the power to control many phases of industrial relations involving employers or unions engaged in or affecting interstate commerce.
>
> . . . .
>
> Federal pre-emption is usually invoked whenever there are very real potentials of conflict between federal and state regulation. Such real potentials of conflict exist when it is clear or may fairly be assumed that activities which the state purports to regulate are prohibited by the National Labor Relations Act or interfere with or impinge on rights granted thereby.

51 C.J.S. *Labor Relations* § 23, at 606-08 (1967).

In *Int'l Assoc. of Machinists* v. *Gonzales*, 356 U.S. 617 (1958), the United States Supreme Court stated that the protection of union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by federal law. A discussion of the applicable National Labor

Relations Act (NLRA) standards appears in R. Gorman, *Basic Text on Labor Law*, Ch. 29, § 1, at 677 (1976):

> Section 8(b)(1)(A) of the Labor Act declares that it shall be an unfair labor practice for a union "to restrain or coerce employees in the exercise of their rights guaranteed in section 7." Section 7 accords employees the right to form, join or assist unions and the right to engage in concerted activities, and also "the right to refrain from any or all of such activities." Congress's central intention was to forbid the use by unions against nonmembers of the kinds of intrusive economic and physical threats sometimes used by employers against union supporters and barred by section 8(a)(1). Congress also forbade union attempts at disciplining nonmembers or recalcitrant members which took the form of inducing the employer to revoke job benefits (or indeed to terminate the job itself). Congress addressed this problem in section 8(b)(2), which declares it unlawful for a union "to cause or attempt to cause an employer to discriminate against an employee in violation of" section 8(a)(3). Historically, however, the major form of union discipline has been neither threats of physical reprisal nor inducement of discharge from employment but rather internal union sanctions, such as expulsion, suspension of [sic] fine. Union constitutions and bylaws commonly itemize membership wrongs against the union, stipulate the possible sanctions and provide for procedures within the union for charges, trial and penalties. Congress in 1947 declared an apparent intention not to interfere with these "internal" union measures by enacting as a part of section 8(b)(1)(A) a proviso: "Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein."

In *National Labor Relations Board* v. *Allis-Chalmers Manufacturing Co.*, 388 U.S. 175 (1967), the United States Supreme Court held that Congress did not intend, by § 8(b)(1)(A) of the NLRA, to *prohibit* the imposition of reasonable fines on full union members who failed to honor an authorized strike or to *prohibit* attempts to collect such fines. The Court acknowledged the role that membership support of a union

strike plays in its success in collective bargaining and that Congress did not intend to *interfere* with union measures to implement internal discipline. "Congress did not propose any limitations with respect to the internal affairs of unions, aside from barring enforcement of a union's internal regulations to affect a member's employment status." 388 U.S. at 195.

*Allis-Chalmers* is also notable for what it did *not* decide: (1) whether the NLRA *protects* actions by unions to enforce fines against members; and (2) the full extent to which union action for enforcement of disciplinary penalties is pre-empted by federal labor law. The Court stated: "Our conclusion that § 8(b)(1)(A) does not prohibit the locals' actions makes it unnecessary to pass on the [National Labor Relations] Board holding that the proviso protected such actions." 388 U.S. at 192, n. 29. Further, the Court said, "Not before us is the question of the extent to which union action for enforcement of disciplinary penalties is pre-empted by federal labor law." 388 U.S. at 197, n. 37.

In *Scofield* v. *National Labor Relations Board*, 394 U.S. 423, 430 (1969), the United States Supreme Court affirmed the court of appeals and NLRB rulings that a union could properly enforce a union rule related to production ceilings through the collection of fines. The Court also expressly held that the NLRA does not affirmatively *protect* union discipline of members:

> Unless the rule or its enforcement impinges on some policy of the federal labor law, the regulation of the relationship between union and employee is a contractual matter governed by local law. As the trial examiner put it in this case, the Board "never intended . . . to suggest that the disciplinary action[s] in enforcement of [union] rules . . . were affirmatively protected under the Act, as opposed to merely being not violations thereof." *It is thus a "federally unentered enclave" open to state law.*

394 U.S. at 426, n. 3 (emphasis added).

In *National Labor Relations Board* v. *Boeing Co.*, 412 U.S. 67 (1973), the United States Supreme Court held that the adjudication by the NLRB under § 8(b)(1)(A) of the NLRA of an unfair labor practice allegedly committed by a union does not include the authority to determine whether the amount of a

disciplinary fine levied by a union against a member is reasonable, since the issue is one of internal union affairs over which the NLRB has no jurisdiction. The Court then stated:

> Given the rationale of *Allis-Chalmers* and *Scofield*, the Board's conclusion that § 8(b)(1)(A) of the Act has nothing to say about union fines of this nature, whatever their size, is correct. Issues as to the reasonableness or unreasonableness of such fines must be decided upon the basis of the law of contracts, voluntary associations, or such other principles of law as may be applied in a forum competent to adjudicate the issue. Under our holding, state courts will be wholly free to apply state law to such issues at the suit of either the union or the member fined.

412 U.S. at 74.

■ Clearly, in light of the above, a state's law of contracts should be applied in determining the enforceability of a union's fine against a member. In *Cunningham* v. *Independent Soap & Chemical Workers of Kansas City*, 207 Kan. 812, 486 P.2d 1316, 1320 (1971), the court agreed:

> It is almost universally accepted that the relationship between a union and its members is a contractual one. As the source of the union's disciplinary authority lies in the contractual relationship between the organization and its members, it is to the rules of contract law that we must turn in evaluating the union's conduct. (See International Association of Machinists and Aerospace Workers, Local Lodge No. 504 (Arrow Development Co.) and David O'Reilly, 1970 CCH NLRB [§ 22,260] 185 NLRB 22.)
>
> . . . .
>
> Since this is a matter of contract law it is essentially a question of state law.

*Accord Local 248 UAW* v. *Natzke*, 36 Wis. 2d 237, 153 N.W.2d 602 (1967); *Posner* v. *Utility Workers Union of America*, 47 Cal. App. 3d 970, 121 Cal. Rptr. 423 (1975); *Jost* v. *Communications Workers of America*, 13 Cal. App. 3d Supp. 7, 91 Cal. Rptr. 722 (1970); *North Jersey Newspaper Guild* v. *Rakos*, 110 N.J. Super. 77, 264 A.2d 453 (1970).

Here, the fines levied against appellees were penalties and not liquidated damages. The issue of the enforceability of these fines has been left by Congress to be determined by the law of contracts of this state. Accordingly, the circuit court correctly refused to enforce these fines.

Affirmed.

ROGERS and JENNINGS, JJ., agree.