Daniel J. McNAMARA v. Daniel BOHN

CA 99-835                                    13 S.W.3d 185

Court of Appeals of Arkansas
Division IV
Opinion delivered March 22, 2000
[Petition for rehearing denied April 26, 2000.]

*R. David Lewis*, for appellant.

*M. Keith Wren*, for appellee.

JOHN MAUZY PITTMAN, Judge. This appeal is brought from the chancellor's ruling that appellant breached a contract involving the sale of a carpet-cleaning business. Appellee was awarded $30,000 in compensatory damages, $8,449 in punitive damages, and a $2,500 attorney fee. Additionally, in an interlocutory order, the chancellor ruled that appellant had breached a covenant not to compete, and he awarded appellee $3,000 for that violation. Appellant raises fourteen issues on appeal. We find no merit in any of them, and therefore affirm.

On January 16, 1998, appellee agreed to buy, and appellant, as president of McMann, Inc., agreed to sell, a carpet-cleaning and dyeing business for $140,000. Of that amount, $30,000 was paid for the goodwill of the business and $3,000 was paid for a covenant not to compete. The remainder was paid for fixtures, equipment, furniture, and inventory. The sales contract contained three clauses that are relevant to the first issues to be discussed. Paragraph 4E provided that none of the representations made by appellant would contain any untrue statement of material fact or would omit any material fact, the omission of which would be misleading. Paragraph 4F provided that the books, records, accounts, and other documents relating to the sale were true and correct. Paragraph 14 contained a covenant by the seller not to compete against the buyer within a radius of fifty miles of the present business location for a period of three years.

Within a year after the contract was signed, appellee filed suit against appellant claiming that appellant had violated the covenant not to compete and that he had violated paragraphs 4E and 4F by misrepresenting the value of the business. On November 6, 1998, the chancellor issued a temporary restraining order against appellant, enjoining him from "competing, attempting to compete or being involved in the management or clandestine management of any entity which competes or attempts to compete" with appellee's business. In a matter of days following the court's order, appellant transferred ownership of a truck to his son Michaes to be used by Michaes in a competing carpet-cleaning business. Michaes operated his business out of appellant's home, used appellant's phone and fax, was introduced by appellant to a former client, cashed his checks with appellant, and received technical advice from appellant. On January 11, 1999, appellee filed an amended complaint in which he reasserted his breach of contract claim and sought a contempt citation against appellant for violation of the temporary restraining order. A hearing was held, and the chancellor found that appellant had violated paragraphs 4E and 4F of the contract by misrepresenting the value of the business, to wit: he failed to disclose that some of the figures shown on financial documents that appellee reviewed prior to the sale contained revenue from a housekeeping business that was not included in the sale. The chancellor also ruled that the covenant not to compete was violated by appellant's assisting his son in the operation of a competing business. He further found that the

violations of these contractual provisions violated the "implied duty of good faith present in the Contract."

■ Chancery cases are reviewed *de novo* on appeal. *Ward v. Adams*, 66 Ark. App. 208, 989 S.W.2d 550 (1999). However, we will not reverse a chancellor's findings of fact unless they are clearly erroneous. *Id.*

■ We first address appellant's argument that his assistance to his son did not constitute "competition" and therefore did not violate the covenant not to compete. The contract defines competition to include "competition directly by working or indirectly through ownership in or clandestine management of any business" that competes with appellee. The chancellor found that appellant's undisputed assistance to his son in the manner set forth above, as well as testimony from a customer that appellant had been present and working on a carpet-cleaning and repair job along with Michaes in December 1998, constituted a breach of the covenant not to compete. We cannot say that this finding was clearly erroneous. The contract's definition of the term "competition" included both direct competition and indirect competition through the clandestine management of a business. The evidence showed that appellant's numerous means of assisting his son in a competing business were significant enough to be considered clandestine management. We therefore find no error on this point.

■ Appellant also argues that appellee waived any breach of the covenant not to compete by initially allowing appellant to perform carpet-cleaning services at residences (as opposed to commercial cleanings, from which appellee derived most of his income). We do not reach the merits of this issue because appellant did not plead waiver as he was required to do under Ark. R. Civ. P. 8(c), nor did he obtain a ruling form the chancellor on his waiver theory. *See Britton v. Floyd*, 293 Ark. 397, 738 S.W.2d 408 (1987).

■ Next, appellant argues that any omissions regarding the value of the housekeeping business were immaterial. In particular, he claims that the housekeeping business was never profitable. Thus, he says, its inclusion in the financial documents was immaterial to the sale. We disagree. The evidence as to the profitability of the housekeeping business was conflicting. Although appellant testified that the business was not profitable, his former bookkeeper testified

that housekeeping accounted for thirty to forty percent of the total business revenue. Further, the bookkeeper said that she and another worker left appellant in 1996 to take over the housekeeping business. Although they quit within four months because the work was too hard, they made a living from the business. Conflicts in testimony are to be resolved by the trier of fact. *See Belcher v. Stone*, 67 Ark. App. 256, 998 S.W.2d 759 (1999). Here, the chancellor exercised his prerogative and resolved the conflict in favor of appellee. Such resolution was particularly justifiable in light of his finding that appellant had destroyed business records before trial and that he was "devoid of credibility." We defer to the superior position of the chancellor in determinations of credibility. *Argo v. Buck*, 59 Ark. App. 182, 954 S.W.2d 949 (1997).

■ Appellant argues next that the chancellor should not have found a violation of the implied covenant of good faith and fair dealing because that theory was not pled by appellee. It is true that appellee's complaint made no reference to this cause of action. However, there is no reversible error on this point. The chancellor found that appellant had breached the express terms of the contract and had damaged appellee as a result. Therefore, any finding with regard to the implied duty of good faith was superfluous and had no bearing on the outcome of the case. No purpose would be served by reversing on this point. *See City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982), *cert. denied*, 462 U.S. 1111 (1983); *Ritchey v. Frazier*, 57 Ark. App. 92, 940 S.W.2d 892 (1997).

■ Appellant also contends that he was not bound by the contract because he was not a party to it. He denies liability because he signed the contract not as an individual but as president of McMann, Inc., the company of which he was president. Appellant cites no authority, nor does he make any convincing argument on this point, so we need not address it. *Dugal Logging, Inc. v. Arkansas Pulpwood Co.*, 66 Ark. App. 22, 988 S.W.2d 25 (1999). Nevertheless, the contract provides that it is binding on the parties' legal representatives.

■ The next issue concerns a merger clause contained in the contract. Paragraph 8 provides that the contract contains the entire agreement between the parties and supersedes all prior agreements, representations, and understandings. Appellant contends that this clause precludes his being liable for any alleged misrepresentations

regarding the value of the business. A written contract may contain a merger clause which extinguishes all prior and contemporaneous negotiations, understandings, and verbal agreements. *Farmers Coop. Ass'n v. Garrison*, 248 Ark. 948, 454 S.W.2d 644 (1970). Such a clause is simply an affirmation of the parol evidence rule. *Id.*

■ Appellant's argument on this point fails for two reasons. First, the allegation of breach was directed to his breach of paragraphs 4E and 4F of the contract, not on free-standing prior oral representations. Secondly, parol evidence is admissible to show fraudulent inducement to contract. *See Sellers v. West-Ark Constr. Co.*, 283 Ark. 341, 676 S.W.2d 726 (1984).

■■ The next set of issues concern the amount of damages awarded by the chancellor. As stated earlier, he awarded $30,000 in compensatory damages, which represented the destruction of the goodwill of the business, $3,000 for violation of the covenant not to compete, and $8,849 in punitive damages. Appellant's first argument is that the $30,000 and the $3,000 constituted improper awards of liquidated damages and that there is no evidence to support the amount of damage to goodwill. We disagree. Liquidated damages are a proper part of a contract when the parties contemplate that damages will flow from failure to perform the contract, that such damages will be indeterminate or difficult to ascertain, and that the sum bears a reasonable proportion to the damages the parties contemplated might flow from breach. *See Johnson v. Jones*, 33 Ark. App. 149, 807 S.W.2d 39 (1991). However, if the contract stipulation merely constitutes a penalty, it is unenforceable. *Id.*

■ The $30,000 and the $3,000 awarded by the chancellor are not the result of a contract stipulation as to liquidated damages. These amounts simply appear in the contract as representing the value of the goodwill and the covenant not to compete. The chancellor used these figures to assess the value of the damaged goodwill and the breach of the covenant not to compete. Because appellant's breach took place within several months after the contract was signed, we see no error in the chancellor using these amounts.

■ Next, appellant contends that the award of $8,449 in punitive damages was improper. He argues first that, because appellee is not entitled to compensatory damages, he should not receive

punitive damages. *See Country Corner Food & Drug, Inc. v. First State Bank*, 332 Ark. 645, 966 S.W.2d 894 (1998). However, because we have held that the award of compensatory damages in this case was proper, this issue is moot. Appellant also argues that a court of equity cannot generally award punitive damages. His statement of the law is correct. *See Bright v. Gass*, 38 Ark. App. 71, 831 S.W.2d 149 (1992). However, he is barred from raising this issue because he did not object to the chancery court's consideration of punitive damages nor did he move to transfer the case to circuit court. *Id.* In any event, the court awarded the punitive damages to redress appellant's violation of the November 6 order. The process of contempt may be used to effect civil remedies, the result of which is to make the innocent party whole from the consequences of the contemptuous conduct. *Wakefield v. Wakefield*, 64 Ark. App. 147, 984 S.W.2d 32 (1998).

We turn now to two issues regarding a counterclaim filed by appellant for breach of contract. These issues concern paragraph 23 of the contract which provided that from February 16, 1998, to June 30, 1998, appellee would employ appellant "as an independent contractor at the rate of $550 per week based on forty hours per week." It is undisputed that appellant was not employed as required by this clause. Therefore, appellant claims, appellee was the first to breach the contract. The chancellor ruled against appellant on his claim because he did not appear for work when called by appellee and because he acted with unclean hands. There was evidence to support the chancellor's ruling. Appellee testified that he had called appellant for work on several occasions but that appellant was not able to work for various personal reasons. Considering appellee's offers to appellee to work, we cannot say that the chancellor clearly erred in ruling that appellee was not the first to breach the contract.

Appellant also contends that appellee was the first to breach the contract because he did not make a security deposit on a lease agreement signed by the parties in connection with the sale of the business. This contention is easily addressed by noting that appellant is not asserting a breach of the sales contract, but of a different contract. Thus, there is no basis for the argument that appellee was the first to breach the sales contract.

The next two issues involve the chancellor's denial of appellant's motion for a new trial. Appellant claims first that he was

entitled to a new trial for the reasons previously asserted. Because we have held in appellee's favor on those issues, we do likewise on this one. Appellant adds that the chancellor's denial of a new trial was also wrongful because his damage award was based on passion and prejudice. *See* Ark. R. Civ. P. 59(a)(4). Given our previous resolution of the issues, we find no evidence of passion or prejudice. Finally, appellant contends that the chancellor erred in failing to consider a letter written by a clinical therapist which he filed in connection with his motion for new trial. The chancellor's law clerk purportedly notified appellant's counsel that the letter was an improper *ex parte* communication and would not be placed in the record. There is nothing in the abstract concerning this exchange or concerning the contents of the letter. There is no evidence that appellant attempted to make a proffer of the letter or attempted to have it included in the record on appeal. Under the circumstances, it is impossible for us to address this issue. We note generally that a motion for new trial cannot be used to bring into the record that which does not otherwise appear of record. *Sharp County v. Northeast Ark. Planning & Consulting Co.*, 269 Ark. 336, 602 S.W.2d 627 (1980).

Appellant's last argument is that the award of attorney fees should be reversed. However, because we have upheld the chancellor's ruling, leaving appellee the prevailing party, the award will stand.

Affirmed.

HART and STROUD, JJ., agree.